# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **BRIAN WINKLER,** | |
| **Plaintiff,** | |
| v. | **Case No. 18 C 3707** |
| **TOTAL QUALITY LOGISTICS, LLC,** | **Judge Harry D. Leinenweber** |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Defendant Total Quality Logistics, LLC moves to dismiss this suit and compel Plaintiff Brian Winkler to litigate his claims in arbitration. (Def.'s Mot., Dkt. No. 8.) The Court finds the parties entered into a binding arbitration clause encompassing the claims Winkler pursues, so the Court grants Defendant's Motion. Winkler's suit is dismissed without prejudice as stated herein.

## I. BACKGROUND

According to Winkler's Complaint, he worked for Defendant in Cook County as a Logistics Accounts Executive (initially as a Trainee in that role) from August 14, 2017, to May 8, 2018. As an Executive, Winkler received part of his pay in the form of a 25% commission on all sales he made. Then, on April 26, 2018, Winkler discovered a syringe in the garbage can at his workplace. Winkler suspected the syringe could have been used for illegal purposes,

so he shared his discovery with a supervisor, who responded by immediately escorting Winkler from the work premises and ordering him to take a drug test. Winkler did so, and Defendant suspended him without pay pending the test's outcome.

Despite issuing that suspension, however, Defendant continued to contact Winkler with work-related questions. The Complaint suggests Winkler responded to those questions, thus his claim that "he was still working for Defendant" without pay. (Compl. ¶ 13, Dkt. No. 1.) On May 8, 2018, Winkler learned two things. First, his drug test results had come back positive for prescription medications. Second, even though Winkler allegedly had a prescription for the medication in question, Defendant had decided to terminate him on the basis of his drug test results.

In this suit, Winkler contends Defendant never paid him for his time spent on suspension nor gave him the commissions he earned on sales made prior to his termination. Those allegations amount to three claims: In Count I, a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for wages and overtime owed for those weeks Winkler allegedly worked while on suspension; in Count II, a claim under the Illinois Sales Representative Act, 820 ILCS 120/2, for commissions earned prior to his termination; and in Count III, a common law retaliatory discharge claim, in which Winkler contends he was only forced to take a drug test and


thereafter fired because "he notified a supervisor regarding the possibility of illegal activity occurring in the workplace." (Compl. ¶ 24.) In addition, Winkler originally pursued a declaratory judgment count seeking a ruling that the non-compete clause in his employment contract is overly vague. Winkler has since voluntarily dismissed that fifth count, however, so the Court need not consider it now. (*See* Minute Entry, July 31, 2018, Dkt. No. 10.)

Defendant responds to these charges by moving the Court to dismiss Winkler's Complaint in full and compel Winkler to take his claims to arbitration. In so moving, Defendant relies upon the arbitration agreement (hereafter, "the Agreement") contained within the employment contract Defendant and Winkler signed prior to the start of Winkler's employment. (Arbitration Agreement, Ex. 1 to Def.'s Mot., Dkt. No. 8-1.) Winkler admits the Agreement exists and that he signed it, yet he contends the Agreement is unconscionable and thus void. In addition, Winkler argues the Agreement should be ignored because it lacks consideration and compels arbitration procedures that make no sense. Winkler cabins these final two objections within his unconscionability argument, but they are actually discrete arguments that deserve separate treatment. The Court addresses these at the end of this opinion.

## II. DISCUSSION

Before proceeding, the Court notes that all three of Winkler's claims fall within the scope of the Agreement, which explicitly includes "any and all of the Parties' rights, causes of action, or claims against or between one another that arose out of or in any way relate to [Winkler's] employment with [Defendant] unless otherwise excluded in this agreement." (Arbitration Agreement § 1.A, Dkt. No. 8-1.) Those exceptions are discussed in greater detail below (*see infra* at Part II.A.1), but none provides a carve out for Winkler's allegations.

Given that, the key question is whether the Agreement applies to the instant dispute. To decide as much, the Court applies state-law principles of contract formation. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citation omitted). Here, as the Agreement provides, the applicable *corpus* is Ohio state law. (Arb. Agreement § 5.)

### A. Unconscionability

"[W]hen examining an arbitration clause, a court must bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." *Ball v. Ohio State Home Servs., Inc.*, 861 N.E.2d 553, 555 (Ohio Ct. App. 2006) (citation and internal quotation marks omitted). Still, that presumption may be overcome on the grounds of unconscionability. *Id.* If a

party wishes the court to void a contract for unconscionability, the party must carry the burden of proving the agreement is both substantively and procedurally unconscionable. *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 25 (Ohio 2008) (citations omitted).

Winkler argues, as he must, that the Agreement fails in both respects. But his response brief is no portrait of clarity, and it often conflates the two forms of unconscionability. That said, the Court takes each form of unconscionability in turn and addresses Winkler's arguments as each becomes relevant.

### *1. Substantive Unconscionability*

Substantive unconscionability concerns the terms of the contract and "requires a determination of whether the contract terms are commercially reasonable in the context of the transaction." *Neel v. A. Perrino Constr., Inc.*, No. 105366, 2018 WL 2148445, at *3 (Ohio Ct. App. May 10, 2018). On this front, Winkler seems to have two arguments: (1) the Agreement foists big or unnecessary costs upon him; and (2) the Agreement is one-sided.

The first argument has no purchase. To succeed in arguing that prohibitive cost renders the Agreement unconscionable, Winkler must do more than baldly assert the costs are too high. *See Benfield*, 884 N.E.2d at 25 (finding party resisting arbitration failed to demonstrate costs rose to level of

unconscionability) (citing *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004) (requiring party claiming that arbitration was cost-prohibitive to "present specific evidence of likely arbitrators' fees and its financial inability to pay those fees")). Moreover, Defendants suggest Winker fails to adduce evidence showcasing these purported costs because the costs imposed on him by the Agreement are actually quite low. The Agreement exempts Winkler from any initial outlay greater than $200, and even that will be borne by Defendant upon a showing of indigence. (Arb. Agreement § 8, Dkt. No. 8-1.) The cost argument avails Winkler of nothing.

Winkler's second substantive unconscionability argument is that the Agreement is one-sided: He contends the Agreement excludes "all of those claims that an employer might bring against an employee," but almost none that an employee might bring against an employer. (Winkler's Resp. 3, Dkt. No. 11.) But that characterization is not accurate—the imbalance is not as great as Winkler contends. The Agreement excludes only: certain employee-initiated actions (as required by law), such as claims for unemployment benefits or worker's compensation; and employer-initiated actions predicated on violations of a separate agreement between the parties, namely the self-explanatory "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement." (Arb.

Agreement § 1.B.)  So, while the Agreement leaves open greater access to the courts for Defendant than for Winkler, it is not clear that said imbalance is sufficient to render the Agreement substantively unconscionable.

Indeed, this Agreement resembles the permissible—and yet imperfectly balanced—arbitration agreement contemplated in *H.H. Franchising Systems, Inc. v. Pawson*, No. 1:17-CV-368, 2018 WL 1456131, at *6 (S.D. Ohio Mar. 23, 2018).  In that case, the arbitration agreement advantaged the plaintiff by providing it, alone, with the right to demand that any dispute involving more than $100,000 be litigated rather than arbitrated.  Still, the court refused to find the agreement substantively unconscionable, noting that "[w]hile this particular clause provides [p]laintiff an advantage—the opportunity to choose litigation over arbitration—not shared by [d]efendants, it is not so one-sided as to be considered commercially unreasonable." *Id.* at *6.  Here, Winkler and Defendant share a similarly lopsided Agreement.  Like the clause in *Pawson*, the Agreement here benefits one side over the other and yet does not "oppress or unfairly surprise" the disadvantaged party. *Id.*  The imbalance of which Winkler complains fails to render the Agreement substantively unconscionable.

That failure alone dooms Winkler's efforts to resist the arbitration compelled by the Agreement.  But even if Winkler's

substantive-unconscionability arguments had prevailed, he still could not show that the Agreement is procedurally unconscionable.

### *2. Procedural Unconscionability*

"Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Miller-Holzwarth, Inc. v. L-3 Commc'ns, Corp.*, No. 4:09CV2282, 2010 WL 2253642, at *3 (N.D. Ohio June 2, 2010) (citation omitted). "In determining whether an arbitration clause is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Schaefer v. Jim Brown, Inc.*, 33 N.E.3d 96, 100 (Ohio Ct. App. 2015) (citation and internal quotation marks omitted). "Procedural unconscionability is not conditional on the existence of any one factor, but instead, is a fact-sensitive question that considers the surrounding circumstances of each individual case." *Id.* (citation omitted).

Winkler's procedural unconscionability argument focuses on what he views as the parties' dissimilar bargaining positions: Defendant drafted the Agreement and could demand of Winker whatever it wanted, leaving Winkler no resource but to sign. The problem with this argument is that nothing in the record or Winkler's

briefing suggests Winker was as trapped as he now suggests. He simply could have walked away from the table. And that dispels his argument. "When a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable." *W.K. v. Farrell*, 853 N.E.2d 728, 737 (Ohio Ct. App. 2006) (citations omitted). Winkler has not carried his burden to show procedural unconscionability, so his efforts to void the Agreement on this ground fails.

**B. Winkler's Other Arguments**

As mentioned above, two of Winkler's arguments do not fit neatly within the unconscionability analysis. The first of these is Winkler's contention that because he "gained nothing" from the Agreement, the Agreement fails for lack of consideration. (Winkler's Resp. 6-8, Dkt. No. 11.) That argument cannot pass muster, however, because mutual assent to arbitrate claims suffices for consideration. *See Price v. Taylor*, 575 F. Supp. 2d 845, 853 (N.D. Ohio 2008). Winkler's earlier-recounted objection that the Agreement provides an imbalance of benefits does not undercut that rule. *Compare id.* (finding consideration where both parties promised to submit all disputes *not excluded by the agreement's terms* to arbitration), *with Harmon v. Philip Morris Inc.*, 697 N.E.2d 270, 272 (Ohio Ct. App. 1997) (finding lack of

consideration where agreement required employees to arbitrate all claims against employer, but effectively allowed employer to avoid arbitration of all claims against its employees).

Winkler's second miscellaneous argument is an objection to the mechanics envisioned by the Agreement. Winkler claims the Agreement makes no sense because it at once demands that the arbitration take place here, in Cook County (*see* Arb. Agreement § 3 (reciting that the arbitration shall take place in the county where the employee last worked for the employer)), and yet be subject to the procedures and rules of the Cincinnati Bar Association Arbitration Services ("CBAAS") (*see id.* § 7). It is not clear how these provisions are incongruous, however. Today, this Court applied Ohio law. Surely an arbitrator could likewise apply CBAAS rules even when the arbitration she presides over takes place somewhere other than Cincinnati. Winkler's final miscellaneous objection is no reason to invalidate the Agreement.

### III. <u>CONCLUSION</u>

The parties here entered into a binding Agreement which compels arbitration of the three claims Winkler pursues in his Complaint. That Agreement is neither unconscionable nor otherwise materially flawed as Winkler contends. The Court accordingly enforces that Agreement, compels the parties to arbitrate their dispute, and dismisses the instant case without prejudice to

Winkler later challenging the arbitration decision. *See HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861, at *8 (N.D. Ill. Feb. 16, 2016). Defendant's Motion to Compel Arbitration is granted.

**IT IS SO ORDERED.**

								Harry D. Leinenweber, Judge
								United States District Court

Dated: 12/13/2018